# City of Scranton *versus* Pennsylvania Coal Co.

[105  445
160  502

105  445
165  630

1. Property situated in a rural district, and used as farm land, cannot be assessed according to the " foot front rule " for improvements to a public avenue upon which it abuts. A statute authorizing such assessment is unconstitutional and void.

2. Certain Acts of Assembly authorized the extension and grading of public avenues detween the city of Scranton and the borough of Dunmore, and directed that the cost of said improvements should be equitably apportioned and assessed on the property or lots fronting on said avenues, " and unless lots are otherwise defined and laid out by the owners, forty feet front and one-half the block in depth shall be taken to be a lot," . . . . . " so that the cost shall, as nearly as practicable to distribute it, be borne equally by each lot." One of said avenues, as extended, passed through a rural section of country. Upon the trial of a scire facias sur municipal claim, to recover an assessment against a lot fronting on the avenue, the court instructed the jury that if they found (1) that the property was rural, and used as farm land, and (2) that the avenue was extended and improved as a general public benefit, their verdict should be for the defendant:

*Held*, that the instruction was proper.

February 25, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lackawanna county:* Of July Term, 1883, No. 3.

Scire facias sur municipal claim, by the city of Scranton against the Pennsylvania Coal Company, owner or reputed owner, to recover the sum of $763.63, being the amount of an assessment laid against certain property fronting on Washington avenue, for the cost of grading the same.

On the trial, before HANDLEY, P. J., and LEWIS and MOFFITT, A. JJ., the following facts appeared: Washington avenue, in the city of Scranton, was opened and graded under the provisions of the Act of April 3, 1872, entitled " An Act to extend certain avenues in the city of Scranton," and a supplement thereto, approved April 17, 1873. The Act of April 3, 1872, provided, inter alia, as follows:

" Sec. 1. That it shall be the duty of the Court of Quarter Sessions of Luzerne county, upon the application by petition of twenty or more of the citizens residing on, and owners of property on, either Wyoming, Washington or Adams avenues, in the city of Scranton, to appoint five commissioners, two of whom shall be citizens of the borough of Dunmore, not property holders on either of said avenues, whose duty it shall be to view, lay out and extend said avenues from Vine street, in said city, to the Philadelphia and Great Bend turnpike, in the borough of Dunmore, conforming, as near as practicable, to the plot of said city and borough on the map made and pub-

lished by David Coughlin; said extensions to be laid out and opened so as to connect such parts of said avenues as are now opened and graded, and to make of them continuous highways between the terminal points above named; said extensions to be opened and graded, and the damages assessed and paid, as hereinafter provided."

"Sec. 5. That the cost and expense of opening and grading said avenues, as herein required, shall be equitably and impartially assessed to, and paid by, the owners of property and lots fronting on said avenues." . . . . .

"Sec. 6. That as soon as the grading of said avenues is completed, or the cost thereof is accurately ascertained, it shall be the duty of said supervisors to equitably apportion and assess the same on the property or lots fronting on and adjoining said avenues; they shall report, in writing, all of their proceedings to the commissioners of said city, and the same shall be filed and entered in the journal or minutes of the proceedings of said commissioners; said report shall state specifically the property or lots assessed, the amount assessed to each, with the name or names of the owners, and a description of the lots and properties so assessed; and unless lots are otherwise defined and laid out by the owners, forty feet front and one-half the block in depth shall be taken to be a lot, except corner lots, which shall be taken as fifty feet front and same depth as others."

The supplemental Act of April 17, 1873, provided, inter alia, as follows:

"Sec. 6. That . . . . . as soon as the cost of opening and grading the avenues and streets for public travel is ascertained . . . . . the same shall be justly and equitably apportioned and assessed on each lot fronting on the avenues and streets to be opened and graded by said commission, so that the cost shall, as nearly as practicable to distribute it, be borne equally by each lot; that proposals for grading shall be made for each avenue and street separately, and lots assessed only for the cost of grading the avenue or street on which they front."

Other sections of said Acts provided penalties for non-payment of assessments, and that claims filed for such assessments should be liens until paid, and collectable by scire facias, &c.

The defendants offered evidence to show that at the time the avenue was graded the property against which the assessment in suit was laid was adapted and used for agricultural purposes only.

Objected to, for the reason that under the Acts of Assembly in this case, the commission were not required to make an assessment at any fixed figure, or in any fixed manner, and

[Scranton *v.* Penna. Coal Co.]

if they erred in making their assessment the remedy of the defendant, in this case, was by an appeal from the assessment, and the evidence is incompetent and immaterial.

Objection overruled; exception.

The defendant presented, inter alia, the following points:

4. If the jury believe that the defendant's land was farm land and suburban property through which said avenue was laid out, and that said avenue was a general public benefit, the plaintiff cannot recover.

Answer. This point involves two facts. The first is that the property is suburban, and that the avenue was laid out through farm land. Now it is for you to ascertain whether that is correct; whether it is suburban or farm land you can easily ascertain by following the rule, namely, that it is the use the land is put to that is to guide you while passing on this question. The other fact is whether this avenue is a general public benefit: That means, of course, a general public benefit to all the people of this city, and not locally to the people living on the front of each side of the avenue. Now if it is a public avenue, to be used by the public at large, then it falls under the prohibition of the new constitution; it would be special legislation; but if it is used only by the people living upon the front of it on each side, and was so intended, then of course it is not, within the meaning of the law, a public avenue. We therefore say to you, in answer to this point, with the explanation we have already made, that if you find these two facts in the affirmative, then we affirm this point. If, on the other hand, you say that the facts are not as stated therein, then we cannot affirm this point.

5. If the jury believe that the assessment in question was laid equally upon each front foot of all the property along said avenue, without regard to its location or value, the plaintiff cannot recover.

Answer. This point we affirm, provided you find from all the evidence in the case that the land of the defendants was rural or farm land. If you find that it was not, then we cannot affirm this point.

Verdict and judgment for the defendants. The plaintiff took this writ of error, assigning for error, inter alia, the admission of testimony as to the character of the land in question, and the answers to the above points.

*Lemuel Amerman* and *H. M. Hannah* (*I. H. Burns*, City Solicitor, and *E. C. Dimmick* with them), for the plaintiff in error.—The Acts of Assembly in question do not require the application of the foot front rule; on the contrary they provide for a just and equitable apportionment to be made by

sworn commissioners. But even if that rule were applied, it would not be inequitable in this case, where the land over which the street was opened required almost uniform grading, hence the assessments were quite uniform. The defendant made no objection at the time the work was done; if dissatisfied, it should have appealed from the assessment, but it accepts the benefit, and seeks to escape the obligation.

*Edward N. Willard* (*Everett Warren* with him), for the defendant in error.—The foot frontage rule of assessment, as applied to rural, suburban or farm property, for the cost of a public avenue intended to benefit the entire public, is unequal, unjust, and unconstitutional: Washington Avenue Case, 19 P. F. S., 352; Seely *v.* City of Pittsburgh, 1 Norris, 360; Hammett *v.* City of Philadelphia, 15 P. F. S., 146; Bidwell *v.* City of Pittsburgh, 4 Norris, 412; City *v.* Rule, 12 Norris, 15; Craig *v.* City, 8 Norris, 265; Cooley's Const. Lim., 500, and cases there cited.

Mr. Justice GORDON delivered the opinion of the court, April 14, 1884.

The contention in the case before us has its origin in a scire facias issued on a municipal claim, filed on behalf of the city of Scranton, against certain lands of the defendant below abutting on Washington Avenue in said city. This avenue or street was laid out, opened and graded under the provisions of the Act of the 3d of April, 1872, entitled "an Act to extend certain avenues in the city of Scranton," and its supplement of the 17th of April, 1873. This Act provided for the appointment, by the Court of Quarter Sessions of Luzerne county, of five commissioners, two of whom should be citizens of the borough of Dunmore, who were authorized to view, lay out and extend either Wyoming, Washington or Adams avenue from Vine street in the city of Scranton, to the Philadelphia and Great Bend turnpike in the borough of Dunmore. These extensions were to be so laid out as to connect them with those parts of the avenues above named then opened and graded, in order to make them continuous highways between the terminal points fixed by the aforesaid Act of the General Assembly. It was further provided by the 6th section of said Act, " That as soon as the grading of said avenues is completed, or the cost thereof is accurately ascertained, it shall be the duty of the said supervisors," created by the previous section, "to equitably apportion and assess the same on the property or lots fronting on and adjoining said avenues." . . . . . " And unless lots are otherwise defined and laid out by the owners, forty feet front and one half of the block in depth

[Scranton v. Penna. Coal Co.]

shall be taken to be a lot, except corner lots, which shall be taken as fifty feet front, and the same depth as others."

It would thus seem that at the time of the passage of this Act, the city of Scranton and the borough of Dunmore were separate municipalities, and that the avenues mentioned were designed to extend from the one to the other, and it further appears, not only from the evidence but also from the verdict, that much of the land, including that of the defendant, through which Washington avenue was extended, was rural and used only for agricultural purposes.

Now, it is contended by the counsel for the plaintiff, that the assessment made upon the defendant's land, and for which the lien was filed, having been made under the above recited sixth section, it is extra the previous decisions of this court, in that the foot front rule is not here applied, but instead thereof an equitable apportionment and adjustment of the cost of the grading among and upon the several properties abutting upon the said street. But, in the first place, we are not convinced that this is a proper interpretation of the Act. If the foot front rule was not in some shape to be an element in the proposed assessment, we cannot understand why a measure of forty feet was arbitrarily adopted as a lot front notwithstanding no subdivisions whatever had been made by the proprietors of the lands. Why, for instance, was the farm land of the defendant to be thus cut up for taxation, unless these subdivisions were to be assessed in the proportion that each of their fronts bore to the whole length of the avenue? Under any other hypothesis than that just indicated, the question here put is certainly not of easy solution. Passing, however, this phase of the case, we are yet at a loss to understand how the mere method of assessing the cost of grading the street can affect the principle here involved. In the Washington Avenue Case, 19 P. F. S., 352, the assessment was not on the basis of the foot front rule, but by the acre, yet not the less was the Act condemned which authorized it. It is the vicious principle of compelling certain farm lands, to the exclusion of others, to pay for an improvement which to them, as farm lands, is of no more benefit than to the general public, that has met with the reprobation of this court; the singling out from a community certain persons, and compelling them to shoulder a burthen which should be borne equally by all the taxables of the municipality; the imposition upon one man of the cost of a public improvement, and that merely on the ground of the accident of proximity.

But we need not discuss this matter at greater length, for it does not enter into this case. The learned attorney for the plaintiff seemed to have forgotten that the assessment was

9 OUTERBRIDGE.—29.

made under the supplement of the seventh of April, 1873, and that if there ever was any doubt as to the proper construction of the Act in this particular, it was resolved by the language of this supplement. By it some material alterations were made in the previous statute, inter alia, the number of persons constituting the board of commissioners was raised from five to seven; these commissioners were authorized to open, extend, and grade other streets and avenues as though included in the previous Act, and were to make the assessments necessary to cover the cost of grading.

The manner in which they were to perform this duty is thus specified in the 6th section of the supplement: " That as soon as the cost of opening and grading the avenues and streets for public travel is ascertained from the proposals accepted, the same shall be justly and equitably apportioned and assessed on each lot fronting on the avenues and streets to be opened and graded by said commission, so that the cost shall as nearly as practicable to distribute it, *be borne equally by each lot.*" Here we see that the assessment is to be made, as it in fact was made, in no other way than by the lot, and as we have previously seen, where along said streets farm lands occur, which have not as yet been subdivided by their owners, forty feet front is to be regarded as a lot and assessed accordingly. Thus it appears that the just and equitable apportionment is to be made, not upon the lots according to their relative values, but according to their frontage. We thus have strictly and literally an assessment and taxation by the foot front rule, a rule which, when applied to rural property, has met with the emphatic condemnation of this court in a number of cases, among others, the Washington Avenue Case, above cited: Seely *v.* Pittsburgh, 1 Norris, 360; Craig *v.* Philadelphia, 8 Norris, 265, and the City *v.* Rule, 12 Norris, 15.

The material point raised in the court below being thus disposed of, we need not consider the assignments of error seriatim. The learned Judge of that court clearly and positively instructed the jury that if they found the property charged with the lien to be farm land, and that it was used for farming purposes only, their verdict should be for the defendant, and if, on the other hand, it was not rural or farm property the plaintiff was entitled to recover. Thus the jury in determining for the defendant also determined the character of the land charged, and so, without regard to the questions which incidentally arose during the trial, definitely settled the controversy between the contestant parties.

The judgment is affirmed.