# New Castle *v.* Rearic, Appellant.

*Municipalities—Road law—Ordinances—Paving streets.*

The Act of May 22, 1895, P. L, 105, relating to the passage of ordinances in cities of the third class for paving streets does not repeal clause 10, section 3, article 5 of the Act of May 23, 1889, P. L. 277.

An ordinance for paving passed under the act of May 23, 1889, and a contract let thereon is not affected by an identical ordinance passed subsequent to the act of May 22, 1895, and supposed to be based upon it.

Where an ordinance of a city of the third class provides that in future paving contracts a clause shall be embodied, that the contractor shall not employ workmen who are not citizens of the United States, and residents of the city, and a subsequent paving ordinance and contract has not embodied in them such clause; the ordinance requiring such clause is not a part of the contract, although referred to in an addendum to the contract under the heading, "Instructions to Bidders."

Argued May 17, 1901. Appeal, No. 143, April T., 1901, by defendant, from order of C. P. Lawrence Co., June T., 1899, No. 77, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of City of New Castle v. John

Rearic. Before RICE, P. J., BEAVER, ORLADY, W. W. POR-
TER and W. D. PORTER, JJ. Affirmed.

Scire facias sur municipal lien.
Rule for judgment for want of a sufficient affidavit of defense.

WALLACE, P. J., filed the following opinion:

This case comes before the court on a motion for judgment
for want of a sufficient affidavit of defense, at No. 5, September
term, 1896. In city lien docket, city of New Castle, filed a lien
against John Rearic on July 28, 1896, and on May 13, 1899,
filed its statement of claim, claiming a balance of $86.42. The
same being served the defendant filed an affidavit of defense
on June 16, 1899. On September 1, 1899, a supplemental affi-
davit of defense was filed. On July 26, 1899, a counter state-
ment to the affidavit of defense was filed by the plaintiff, on
October 9, 1899, an amended affidavit of defense was filed,
and on October 24, 1899, a counter statement to the amended
affidavit of defense filed.

The affidavit of defense and amended affidavit of defense are
somewhat lengthy, but when we take them as a whole and re-
view them to determine whether or not they be sufficient to
prohibit the taking of judgment upon the statement of claim,
we find several questions. And the questions that arise on
this affidavit of defense, because we will term it as one—at
least some of them have been ruled by the higher courts as well
as this court. The amended affidavits have with them attached
copies of ordinances and resolutions which obviate one of the
reasons in the motion for judgment.

The question as to the right to pave without petition is a
question that has been ruled by this court and by the Supreme
Court in the case of Scranton v. Jermyn, 156 Pa. 111. Also, the
question as to the regularity of the resolution and the contents
of the resolution to pave in this case have also been ruled, and
we find that they are sufficient, there is nothing wanting in
them; that all the requirements of the statute have been com-
plied with according to our former rulings, as well as the rul-
ings of the Supreme Court, in the case of Scranton v. Whyte,
148 Pa. 426. And we might add here in this line, that the pre-
sumption is always in favor of the regularity, and unless the

irregularity be pointed out or specified, that presumption prevails. In this we rely on Erie v. Butler, 120 Pa. 374.

This position now takes away from this case all of the questions that are necessary to be ruled with the exception of three. As a great many of the matters are referred to in the affidavit of defense have been ruled over and over by this court, but in the argument of counsel, both for the plaintiff and defendant, they hinge their case principally upon three questions, and when sifted down they are as follows:

1. Does the Act of May 22, 1895, P. L. 105, repeal clause 10, section 3, article 5 of the act of May 23, 1889, in regard to a resolution to pave without petition, etc.?

2. Does the ordinance of the city of New Castle councils of September 6, 1895, repeal the ordinance of March 16, 1895, under which contract for paving of Pittsburg street was let?

3. Was the resolution which was engrossed in the specifications as to the kind of labor to be employed such as to make the contract void?

In answering these we will take up the first question and designate it throughout as question first.   The act of 1889, under which the proceedings were started, provides for a concurrent resolution being passed by two-thirds vote of the council, its approval by the mayor, and a delay of sixty days' notice in order to allow the property owners along the line of the improvement to choose the material with which the improvement is to be made.   The act of 1895 provides for the paving without giving the property holders the right to choose or the sixty days' delay for notice.

The question now comes, are these acts repugnant, or, if slightly repugnant, is the repugnancy so great as to work a repeal by the latter of the former by implication?   There is no repealing clause in the act, hence we must look to see whether there is such repugnancy.   In comparing the act of 1891 with the act of 1889, the Supreme Court has held that both acts were effective, and that while a procedure at first sight might appear to be repugnant, that is, that the second provided and took the place of the former, yet the Supreme Court has held otherwise, and that they form two separate means to reach the same end, and that the act of 1891 does not repeal, by implication, the act of 1889, but provides another way.   This is the

view the Supreme Court held in Scranton v. Bush, 160 Pa. 449. Also, Hand v. Fellows, 148 Pa. 457. Also, in Hanover Borough's Appeal, 150 Pa. 205.

Following the same reason that our Supreme Court has followed with regard to the act of 1891 and the act of 1889, we find that the act of 1895 provides for the paving of streets by a vote of the council without giving the property holders a choice or without causing the delay of sixty days or giving notice. The act of 1889 provides for concurrent resolution with a two-thirds vote (while the act of 1895 required a three-fourths vote), the approval by the mayor and the sixty days' notice to choose. When you compare the two you find two modes of procedure, either of which we believe we could stand, and we do not believe that the one is so repugnant as to repeal the other by implication, but that there are two modes and that both are good. That the act of 1895 is an extending or an enlarging act, and while it covers the act of 1889, it goes further and enlarges and gives greater power to councils in making improvements. Following the decision of the Supreme Court in In re Greenfield Avenue, 191 Pa. 294, as well as the principles laid down in Harrisburg v. Sheck, 104 Pa. 53, as to repealing of acts by implication, that we are warranted in reaching the conclusion that the act of 1895 does not repeal clause 10, section 3 of article 5 of the act of May 23, 1889. This disposes of the first question.

That brings us now to the question of the passage of two ordinances. Under the act of 1889, the councils of the city of New Castle passed an ordinance for the paving of Pittsburg street, which ordinance was approved on March 16, 1895, and by virtue of this ordinance a contract was let. And the contract for the paving of Pittsburg street was made with Mr. Eichenlaub on July 31, 1895, which contract was based upon an ordinance of March 16, 1895. True, on September 6, 1895, the same councils passed an ordinance which is identical with the ordinance of March 16, 1895. Why this was done we do not know and neither do we care so far as this question is concerned, but it simply comes to us to determine what effect the passage of the ordinance in September had upon the passage of the ordinance in March, when they were similar. True, the contract was signed after the ordinance of March, and prior to the September ordinance being passed, and work was commenced

prior to the passage of the September ordinance. Indeed, the March ordinance was passed and approved before the passage of the act of 1895. So that there can be no connection between that ordinance and the act of 1895. The ordinance was in force and was a law governing the city in these matters prior to the passage of the act of 1895, and was based upon the act of 1889. The two ordinances being the same in every sense of the word, the one called the act of 1889, and the other supposed to be passed by virtue of the act of 1895, and the act of 1895 not conflicting, as have we found before, with the act of 1889, we cannot see how the ordinance of September 6 would affect the ordinance of March 16, 1895. It would only be reiterating the law that has already been in existence to review this further. And if the ordinance was valid, as we now hold it was, then the passing of another one could in nowise invalidate it—it would only be cumulative of the same thing. And we believe, and so hold, that the ordinance of September 6, 1895, in no way affects the validity of the ordinance of March 16, 1895, so far as the letting of this contract was concerned. In this we feel we are supported by the principles laid down by a learned judge in this state in Barclay v. Leas, 9 Pa. C. C. Rep. 316. To get a higher authority the same principle is promulgated in Chicago, etc., Railway Co. v. United States, in 127 U. S. 406. Relying upon the principles laid down in these, as well as upon our own judgment, we believe that we are justified in reaching the conclusion that the ordinance of March 16, 1895, is regular and valid and the contract based upon that ordinance, so far as the ordinance is concerned, good.

That brings us to the third question, and that question is one that we give very little weight to, and for two reasons. The third question is this: Did the resolution embodied in the instructions to bidders at the time this contract was let, which reads as follows : " Resolved, that all contracts for grading and paving of any streets or alleys and also sewerage that may be let by contract or otherwise in the city of New Castle, shall have embodied in said contract such a clause or agreement that will bind and compel the person or persons getting any of said contracts to employ no person that is not a citizen of the United States and a resident of the city of New Castle, except the skilled labor for the laying the brick, unless otherwise or-

dered by council," invalidate the contract by a specification such as that and prevent the contract being let to the lowest bidder, or is it against public policy? We cannot say that the insertion of the resolution above is against public policy, because before this was passed the legislature on June 25, 1895, P. L. 269, passed an act of assembly almost identical to this clause and for the very same purpose, so that when this clause was inserted, whether it was known to the member who offered it or not, it was simply complying with the act of assembly that was then in force. And further, this is a matter that was in the specifications that was widely known at the time. The defendant was an interested party; he had knowledge of the improvements that were going on and the procedure under which they were being made, and he stood by and permitted it to go on when he could have had a remedy. His acquiescence in this, we believe, would be sufficient, if we had any doubts as to the resolution invalidating the contract, to bar him from now interfering.

Hence, we reach the conclusion that there is nothing in this third question that would prohibit a verdict for the plaintiff or render the proceedings null and void. And after all, when we have considered the questions, as we have now, and reached the conclusion we have, we find that the legislature on May 11, 1897, passed an act which covers the defects of this period, if there be any, called the "Invalidating Act," which act validates the improvement proceedings whereby improvements are made by counsel under the act of 1889, and also the act of 1895; and the time specified in the act covers the time upon which these improvements were made. This act is found in P. L. 1897, page 48. We believe if there was any doubt as to former rulings this act cures it and makes valid any defects that might have been.

With these conclusions of law we are bound to sustain the motion for judgment for want of a sufficient affidavit of defense. All the questions raised in the affidavit of defense are raised upon instruments that are in writing, and the interpretation and rulings of which are for the court and upon the questions as to the law which provides for these proceedings whether it be valid or invalid. So that taking the statement of claim, which makes out a prima facie case, and in seeking to find

from the affidavit of defense something that ought to be submitted to a jury, we are unable to find it, and with our former disposition come to the one conclusion as above stated.

And now, February 18, 1901, the rule granted in this case is made absolute, and the prothonotary directed to enter judgment for the plaintiff in this case, the amount to be liquidated by the prothonotary.

*Error assigned* was the order of the court.

*A. W. Gardner*, with him *B. A. Winternitz* and *John G. Mc-Conahy*, for appellant.—A subsequent affirmative statute is a repeal by implication of a former one made concerning the same matter, if it introduces a new rule upon the subject, and be evidently intended as a substitute for the former law, although it contains no express words repealing it : Johnston's Est., 33 Pa. 511 ; Westfield Borough v. Tioga County, 150 Pa. 160 ; Com. v. Grier, 152 Pa. 180 ; Com. ex rel. v. Macferron, 152 Pa. 250 ; McCleary v. Allegheny County, 163 Pa. 584 ; Com. v. Mann, 168 Pa. 297 ; Bennett v. Norton, 171 Pa. 233 ; Somerset v. Stoystown Road, 74 Pa. 63 ; Rhoads v. Hornerstown Bldg. & Savings Assn., 82 Pa. 187 ; Hickory Tree Road, 43 Pa. 139 ; Gwinner v. Lehigh & Del. Gap R. R. Co., 55 Pa. 126 ; Morewood Ave., 159 Pa. 39 ; Chester v. Eyre, 167 Pa. 308 ; Phila. v. Bell, 147 Pa. 243 ; Williamsport v. Beck, 128 Pa. 147 ; Boyer's Petition, 15 Pa. C. C. Rep. 531 ; Meadville City v. Dickson, 129 Pa. 1.

The ordinance approved September 6, 1895, which is an exact duplicate of the former ordinance, was not a re-enactment of said ordinance but a repeal of it : Tiedeman on Municipal Corp. sec. 161 ; Fox's Case, 1 Pa. Dist. Rep. 513.

The contract between the city and V. D. Eichenlaub under which the paving in this case was done is illegal and void, because it contained the provision under the head, " Instruction to Bidders 4 : " Frame v. Felix, 167 Pa. 47 ; Phila. v. Jewell, 135 Pa. 329 ; Mazet v. Pittsburg, 137 Pa. 548 ; Jadwin v. Hurley, 10 Pa. Superior Ct. 104 ; Addis v. City of Pittsburg, 85 Pa. 379 ; Tiedenan's Municipal Corp. sec. 172 ; City of Trenton v. Shaw, 8 Cen. Repr. 908 ; City of Erie v. Moody, 176 Pa. 478 ; Phila. v. Gorgas, 180 Pa. 307.

*James A. Gardner*, city solicitor, for appellee.—We contend that as a matter of law the act of 1895 did not repeal the act of 1889, but was more in the nature of a supplement to the Act of May 16, 1891, P. L. 75 : Erie v. Bootz, 72 Pa. 196 ; Sifred v. Com., 104 Pa. 179 ; Chicago, etc., Ry. Co. v. U. S., 127 U. S. 406 ; Wood v. United States, 16 Pet. 363 ; Rhein Bldg. Assn. v. Lea, 100 Pa. 214 ; Osborne v. Everitt, 103 Pa. 421 ; Reynolds St., 2 Pa. Dist. Rep. 66 ; 23 Am. & Eng. Ency. of Law, 489 ; Hand v. Fellows, 148 Pa. 456 ; Hanover Borough's Appeal, 150 Pa. 202 ; Scranton v. Bush, 160 Pa. 499 ; Seaman v. Borough of Washington, 172 Pa. 467 ; Painter's Appeal, 160 Pa. 89 ; Beltzhoover Boro. v. Beltzhoover, 173 Pa. 213.

The ordinance of September 6, 1895 did not appeal the ordinance of March 16, 1895, under which the paving was done : Barclay v. Lea, 9 Pa. C. C. Rep. 316 ; Endlich's Int. of Stat. sec. 490 ; Wood v. United States, 16 Peters, 363 ; Constitution of United States, art. 1, sec. 10 ; Constitution of Pennsylvania, art. 1, sec. 17 ; Black on Const. Law, secs. 269, 276 ; Erie v. Paskett, 14 Pa. Superior Ct. 400 ; Erie v. Griswold, 5 Pa. Superior Ct. 132 ; Pikes Peak Power Co. v. Colorado Springs, 105 Fed. Repr. 1 ; s. c. 5 Munc. C. C. 174 ; 1 Dillon's Municipal Corps. sec. 86.

Opinion by William W. Porter, October 28, 1901 :

The court below and counsel on both sides agree that three questions are involved in a decision of this case, namely, (1) Did the Act of May 22, 1895, repeal the act of May 23, 1899 ? (2) Did the ordinance of September 6, 1895, repeal the ordinance of March 16, 1895, under which the contract for paving was made ? (3) Did the resolution of councils, referred to in the " instructions to bidders " restricting the contractor to the employment of workmen resident within the city of New Castle and citizens of the United States, invalidate the contract ? The first two questions need no discussion. The reasons given in the opinion of the court below are adequate to sustain the findings that the act of May 22, 1895, does not repeal the act of May 23, 1889, in its application to the facts of this case ; and that the ordinance of September 6, 1895, did not have the effect of repealing the ordinance of March 16, 1895.

The third question requires some notice. To the contract under which the work was done appears this addendum: "Instructions to bidders. Pittsburg Street. Bidders will take notice of the following resolution which was approved February 19th, A. D. 1894: Resolved, that all contracts for grading and paving of any streets or alleys and all sewerage that may be let by contract or otherwise, in the city of New Castle, shall have embodied in said contract such a clause or agreement that will bind and compel the person or persons getting any of said contracts to employ no person that is not a citizen of the United States and resident of the city of New Castle, except the skilled labor for laying the brick, unless otherwise ordered by councils." It is contended that this notice is an obligatory part of the contract and has the effect of rendering the contract wholly void, because it prevented an award of the contract to the lowest bidder by limiting the source of labor supply and thereby compelling the submission of higher bids for the work.

An inspection of the contract and of the ordinance of March 16, 1895, shows no incorporation of the limitation into either of them in terms. The resolution of February 19, 1894, in order to be effective, required that future contracts made for street improvements should have "embodied" a clause which should bind and compel the person securing the contract to employ residents of the city of New Castle, etc. The absence of such a clause or stipulation from the ordinance of March 16, 1895, and from the body of the contract, rids the contract in this case of any obligation which might have attached if the restriction had been "embodied" as required by the ordinance of February 19, 1894. Especially is this true since the affidavit of defense alleges that the contract was "founded wholly upon the ordinance approved March 16, 1895." Conceding that notice of the ordinance of February 19, 1894, was before the bidders, nevertheless, knowledge of the provisions of that ordinance could not make it binding beyond its expressed terms. We, however, express no opinion as to the legal effect of the actual introduction into an ordinance and contract of an express provision restricting bidders to the employment of laborers resident in a limited locality.

The judgment is affirmed.